IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SE PROPERTY HOLDINGS, LLC,
as successor by merger with Vision Bank,

        Plaintiff,

vs.                           CASE NO. 3:15-cv-00554-MCR-CJK

RUPERT PHILLIPS, HCB FINANCIAL
CORP., and PHILLIPS CAPITAL
PARTNERS, INC.,

        Defendants.

_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT RUPERT PHILLIPS' VERIFIED MOTION
<u>TO DISQUALIFY PLAINTIFF'S COUNSEL</u>**

Plaintiff, SE Property Holdings, LLC ("SE Property"), files this opposition to Defendant Rupert Phillips' Verified Motion to Disqualify Plaintiff's Counsel, and Incorporated Memorandum of Law ("Disqualification Motion") [D.E.20], and states as follows:

<u>**INTRODUCTION**</u>

The Disqualification Motion is a stall tactic. It is also an attempt to divest SE Property of the counsel that has represented it for years based on counsel's success in securing for SE Property, through another related action pending in this Court, Case 3:13-cv-00006-MCR-CJK ("Prior Action") the right to *finally* engage in

collection efforts on its 44.90% share of a $10,373,604.03 Deficiency Judgment entered March 29, 2011 against Phillips, his wife, and others.  Now, that SE Property is vested with the right to *finally* begin to attempt to recoup its loss and has filed this action for fraudulent transfers and reverse piercing the corporate veil of entities owned and controlled by Phillips, Phillips is pulling out his final trump card – trying to disqualify SE Property's counsel as a strategic move.

This is the type of action that the Preamble to the Florida Rules of Professional Responsibility and the comment to Rule 4-1.7 warn against.  The comment to Rule 4-1.7 provides that while opposing counsel may properly raise the question of a conflict when "the conflict is such as clearly to call in question the fair or efficient administration of justice," "[s]uch an objection should be viewed with caution however, for it can be misused as a technique of harassment."[1]  (Emphasis added).  The Preamble recognizes that "the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapon."

Federal courts throughout Florida recognize that "[d]isqualification of counsel is an extraordinary remedy and courts must take care to grant those

---

[1] Rule 4-1.7 pertains to conflict of interest with *current* clients. The comment to Rule 4-1.9 pertaining to conflict of interest with *former* clients (the rule under which Phillips' travels even though he admittedly is not a former client), directs readers to the comment to Rule 4-1.7 "[w]ith regard to an opposing party's raising a question of conflict of interest."

motions only when necessary" *Silvers v. Google, Inc.,* 2007 WL 141153, *1 (S.D. Fla. 2007).  Courts in *this* district have stated that such motions "should not be granted unless absolutely necessary." *RJSG Properties, LLC v. Marbella Condominium Developers, LLC,* 2009 WL 3581637 (N.D. Fla. 2009).  And, "[w]hen one party seeks to disqualify opposing counsel, courts are skeptical because those motions are sometimes filed for tactical reasons or to harass the other party." *Id; 3Lions Publishing, Inc. v. Scriptnetics, LLC,* 2014 WL 4794764, *1 (M.D. Fla. 2014); *Great American Ins. Co. v. General Contractors & Const. Management, Inc.,* 2008 WL 1994857, *1 (S.D. Fla. 2008)("while the Court is loath to impute such base motives to Plaintiff regarding the instant Motion, it is an inescapable fact that granting this Motion would have the exact effect" of using a disqualification motion as a tool to deprive an opponent of counsel of its choice).

This is **<u>exactly</u>** what Phillips is doing.  Phillips is asserting a conflict of interest and seeking the disqualification of Baker *now* as a strategic move.  Baker has never represented Phillips.   Instead, as even Phillips' Disqualification Motion seems to concede despite filing this motion pursuant to Rule 4-1.9, Baker represented Olson & Associates of NW Florida, Inc. ("O&A"), a handful of entities in which O&A was the managing member and, for a few discrete matters that do not pertain to collection actions or actions for default, Carl Richard Olson

("Olson") and Elaine Olson.[2]   The fact that Phillips' may have had a financial interest in O&A and guaranteed loans made to O&A does not create an attorney-client relationship between Baker and Phillips.  Further, Phillips does not allege – because he cannot – that he, his counsel, Baker, O&A, Olson, and Olson's counsel entered into a written joint defense agreement, nor has he produced a written joint defense agreement or a confidentiality agreement in support of his Disqualification Motion.[3]

The Disqualification Motion is meritless. At the end of the day, SE Property and the undersigned are convinced that the Court would deny Phillips' Disqualification Motion.  But the problem for SE Property is in waiting for the end of that day.  Phillips has threatened to seek an *in camera* inspection of 600 emails, serving discovery – including on non-parties, taking depositions, and requiring an evidentiary hearing to establish that Baker was privy to Phillips' confidential information and should be disqualified as counsel in a matter against Phillips *years*

---

[2] Exhibit A to the Disqualification Motion is a chart titled "Debt Collection Actions in which Olson and Phillips Interests Were Aligned" (Phillips Chart).  Notably, while Phillips lists Baker's client in each matter, in not one matter does the chart reflect Baker as representing Phillips.  Further, while the GulfSouth Deficiency Judgment is listed on the Phillips Chart, Baker is not listed as representing *any* party in that action.

[3] While a written joint defense agreement is not necessarily required to create a joint defense agreement, the lack of one or even any definitive terms as to an agreement is just a further indication that Phillips is grasping at straws to bring himself within the ambit of Baker's former representation of O&A.

later.  In his motion seeking a stay until the Disqualification Motion is resolved,

Phillips contends:

- this matter must be addressed in a "fulsome evidentiary hearing (with appropriate confidentiality protections in place)"

- "To present a complete record on which this Court may reach a just conclusion, ***discovery on such matters must be permitted.***"[4] (emphasis added)

- " . . . this Court must be armed with a factual record concerning the underlying relationships"

- "The breadth of facts relevant to the Court's decision to disqualify (or not) require development through discovery (including non-party discovery as one of Baker's lead attorneys with whom Phillips confided has left Baker's employ)"

- "Factual proof must be presented to the Court at an evidentiary hearing. . ."

- "a sequestration and protective order should be imposed."

Thus, Phillips promises a process that would take – at a minimum –*many months*

and require the expenditure of hundreds of thousands of dollars by SE Property as

Phillips attempts to uncover every last stone in a futile attempt to find support for

his Disqualification Motion – support that does not exist.

---

[4] Phillips is asserting that discovery is needed.  Yet, the basis of Phillips' claim is that he, through the *same* counsel representing him here, shared confidential information with Baker.  This begs the question as to why Phillips needs discovery to uncover confidential information that *he or his counsel* in this case shared with Baker.

There is very real prejudice to SE Property from such a delay. SE Property has finally been given the ability to collect on its almost five million dollar share of the Deficiency Judgment and, as part of that process, has filed this action pleading cognizable claims against Phillips, Phillips Capital and HCB. The Deficiency Judgment is just shy of five (5) years old. Indeed, Phillips and Phillips Capital are already asserting that SE Property's fraudulent transfer claims are barred by the statute of limitations, despite that fact that it was Phillips – through HCB – that fought desperately to prevent SE Property from collecting on the Deficiency Judgment. SE Property is unwilling and unable to allow Phillips to perpetuate this delay and further defraud both it and this Court while he engages in this strategic ploy.

SE Property states – in no uncertain terms – that there is no conflict. The undersigned firm states – in no uncertain terms – that it has not committed *any* ethical violation. Yet, this Court can – and should – find, as an initial and completely dispositive matter, that Phillips has waived any ability to challenge Baker's representation of SE Property *now*. And because Phillips' Disqualification Motion can be entirely disposed of on this basis alone, this Court need not engage in the "fact-intensive" protracted process that Phillips has threatened.

This Court can summarily dispose of the Disqualification Motion on the sole basis of waiver. However, if this Court does not find that waiver applies or does

not find that Phillips' Motion can be disposed of on the papers alone because of Phillips' complete failure to meet his burden, SE Property has directed the undersigned firm to withdraw from representing it in this matter.   While SE Property wishes to continue this action represented by its long-standing counsel intimately familiar with the underlying facts, it is unable to take the bait and allow Phillips to use this Disqualification Motion as a strategic ploy to further delay judgment day.

**SE Property's Allegations Against Phillips Are Not New**

In August 2012, SE Property initially filed suit in state court against GulfSouth Private Bank ("GulfSouth") and other banks related to a Deficiency Judgment entered in March 2011 in favor of GulfSouth, as lead bank in a participated loan, in which SE Property held a 44.90% interest.   The crux of the Prior Action, *initially*, was GulfSouth's failure to undertake any collection efforts on the Deficiency Judgment and assign each participating bank its share of the Deficiency Judgment, as previously agreed to by the participating banks.   Phillips and his wife, Sandra Phillips, are Judgment-Debtors to the Deficiency Judgment. The matter was removed to this Court by the FDIC as Receiver for GulfSouth on January 14, 2013. [PA D.E.1].[5]   Only after removal, did SE Property discover that

---

[5] This Court has access to the docket in the Prior Action. In the interest of not inundating the Court with numerous exhibits, SE Property will cite to the docket

GulfSouth had assigned the Deficiency Judgment and related participation agreements to HCB.  [P.A. D.E.10].  On **January 28, 2013**, SE Property amended the complaint in the Prior Action to add HCB as a defendant based on information from the public records.  [PA D.E.10].  SE Property alleged that Phillips "is or was an officer and director of HCB" and was listed as the President, Treasurer, Secretary and Director of HCB until 2012.  [PA D.E.10,¶¶66-67].

**On August 13, 2013**, SE Property sought leave to further amend its complaint on the grounds of newly discovered evidence. [PA D.E.100].  The newly discovered evidence concerned the extent of Phillips' involvement in, and actual control over, HCB, the Deficiency Judgment *and* the Prior Action, all of which became crystal clear when Phillips appeared at court-ordered mediation in the Prior Action on **July 31, 2013** as the sole representative of HCB.  [PA D.E.100].  The newly discovered evidence was set forth in both the motion and proposed second amended complaint, which the Court granted leave to file [PA D.E.120].  In the second amended complaint filed as an exhibit to the motion on **August 13, 2013** [PA D.E.101], SE Property alleged:

> 66.   HCB is controlled by Judgment-Debtor Rupert Phillips.

> 69.   Judgment-Debtor Rupert Phillips is the current Chairman of the Board of HCB.

---

entry in the Prior Action as [PA D.E __].  SE Property incorporates the documents filed in the Prior Action and cited herein as exhibits to this response.

70.    The "parent" corporation of HCB is Phillips Capital Partners, Inc.

71.    Judgment-Debtor Rupert Phillips is the President and Director of Phillips Capital Partners, Inc. and the Chairman of its Board.

72.    Judgment-Debtor Sandra K. Phillips, the wife of Judgment-Debtor Rupert Phillips, is the Secretary of Phillips Capital Partners, Inc.

73.    Phillips Capital Partners, Inc.'s only shareholders are Judgment-Debtors Rupert and Sandra Phillips and their children.

74.    HCB's only shareholder is Phillips Capital Partners, Inc.

75.    HCB's current President, Joe Dobson, is the CFO of Phillips Capital Partners, Inc.

76.    HCB's current President, Joe Dobson, has worked for companies owned and/or controlled by, or affiliated with, Judgment-Debtor Rupert Phillips since 1991.

79.    Judgment-Debtor Rupert Phillips is in control of when and *if* HCB decides to undertake collection efforts against himself, his wife, and the other Judgment-Debtors.

80.    The Judgment-Debtors have used HCB to acquire other Judgments against some or all of them.

81.    The Judgment-Debtors used HCB to improperly attempt to acquire the Deficiency Judgment and the VB Participation Agreement to prevent SE Property from collecting against them.

82.    HCB is a mere instrumentality of Judgment-Debtor

Rupert Phillips.

83.     HCB is the alter-ego of Judgment-Debtor Rupert Phillips.

Neither HCB nor Phillips sought to disqualify Baker after SE Property filed the

second amended complaint in **August 2013**.

After the second amended complaint was filed and these allegations were

known to Phillips, SE Property noticed Phillips for deposition.   The notice of

taking deposition is attached as Exhibit "A."   Phillips was deposed on **November

5, 2013**.   Brian Rich of Berger Singerman, Phillips' counsel of record in *this*

action, was present at the deposition as Phillips' counsel, as was HCB's in-house

counsel Jason Osborn.   During his deposition, Phillips was questioned by Denis

Durkin of Baker as to the formation of HCB.   Phillips testified that he could not

remember when HCB was originally formed but that he "reactivated" it in 2009 or

2010. When Phillips was questioned about the purpose for the reactivation of

HCB, he testified:

> Actually I think we reactivated in 2009.  *In 2007, when
> the real estate collapse happened, I hired – we actually
> hired your firm and hired Berger Singerman to
> represent us because we thought we were going to have
> to file for bankruptcy because of Olson and Associates*.
> I put my life savings into the real estate business, and it
> was the wrong time to do it. So in 2007, I thought I was
> going bankrupt; and narrowly escaped it, still may not
> have escaped it, so still – still could be problematic.  But
> in – from 2007 until 2009, I had no cash flow, no money,
> just trying to beg and steal a penny to get by.

> In 2009, my son had a business.  He was going to put
> some ATMs out into the market. So I told him I had this
> corporation.  And in 2007, I decided that I would never
> own anything the rest of my life.  There was no need for
> me to ever own a thing.  So in – so the kids activated that
> company and bought some ATM machines and put them
> out, and that's how it got activated.

Phillips Depo at p.8.  Phillips' deposition testimony is attached as Exhibit "B."

During his deposition in 2013, Phillips was questioned about companies that fall

underneath the Phillips Capital umbrella [pp.9-11]; his role in HCB and Phillips

Capital [pp.11-14], the ownership structure of HCB [p.27], Phillips Capital's role

in HCB [p.54], his use of HCB to buy stock that was "going south" for his

daughter and son-in-law to "help them avoid" the collapse [p.17]; HCB's

acquisition of other judgments against him [pp.33-35], collection efforts HCB has

taken against him [p.35-37], and the reasons for HCB's acquisition of the

Deficiency Judgment [p.18-23,42-43].[6]  Phillips, represented at the deposition by

the *same* counsel filing the Disqualification Motion *here*, did not move to

disqualify Baker before, during or after his deposition on November 5, **2013.**

As the case proceeded, SE Property focused on Phillips' actions in using

HCB to acquire judgments against himself and his wife to insulate them from

creditors.  In its initial filings in **February 2013,** HCB raised $67 million in

superior liens as an explanation for why it did not undertake collection efforts on

---

[6] Phillips testified that he appeared at the mediation as the representative of HCB.
[pp.23-24].

the Deficiency Judgment.  [PA D.E. 32 p. 6, 32-1 ¶17].  On **June 4, 2013**, HCB

served a designation of Rule 26 experts and designated an expert ("Gaudet") to

testify about the commercial reasonableness of HCB undertaking collection efforts

against Phillips.  Gaudet opined that HCB's actions regarding the Deficiency

Judgment were both "prudent and commercially reasonable" given the "current

financial position" of the Judgment-Debtors, namely "approximately $67 million

of priming judgments" that would need to be satisfied.  In addressing the financial

position of Phillips, Gaudet considered a list of judgment liens for the Phillipses

("Judgment Lien Chart").  Gaudet's report is attached as Exhibit "C."  The

Judgment Lien Chart is also separately attached as Exhibit "D."

Critically here, the Judgment Lien Chart created, presented, and used by

HCB in the Prior Action and relied on by its expert, **largely mirrors** the Phillips

Chart attached as Exhibit "A" to the Disqualification Motion.  Ten of the

judgments on the chart relied on by Gaudet as superior liens supporting HCB's

position that it was not commercially reasonable to take any action on the

Deficiency Judgment are also listed on the Phillips Chart.  Gaudet was deposed on

July 10, 2013.  A copy of Gaudet's deposition is attached as Exhibit "E." Gaudet

was questioned by Durkin of Baker as to fact information sheets on the Phillipses,

the Judgment Lien Chart, and the Phillipses' financial statements.  [p.25-28].

Gaudet also testified about the $67 million in superior judgments and priming liens

against Phillips.[7] [p.48-50,55-56,60-61,64].[8]

Phillips' knowledge of the Prior Action and the allegations against him therein cannot be disputed.  On February 26, 2015, SE Property filed a motion seeking to reopen discovery for the limited purpose of deposing Phillips and HCB's counsel regarding the extent of Phillips involvement in the Prior Action. The motion was based on Phillips' actions in (1) contacting the "decision-maker" (Button) at SE Property the day after SE Property's corporate representative identified Button as the decision maker during his deposition and (2) then contacting Button again immediately after the unsuccessful settlement conference in that case.  [PA D.E.276].  In the motion, SE Property asserted that this "newly discovered information will conclusively resolve any and all questions regarding Phillips and his full control and authority not only over HCB and HCB's decisions regarding the Deficiency Judgment, but over the decisions being made in this action." [p.2]. Such evidence, SE Property asserted, supported its claims that "Phillips is HCB for all intents and purposes."  SE Property also made clear that it intended to introduce evidence at trial that:

---

[7] In its Order on HCB's motion for summary judgment, the Court referenced Gaudet's finding that Phillips is subject to $67 million in superior judgment liens and his resulting opinion that the deficiency judgment was unrecoverable at that time. [PA D.E.210].

[8] HCB listed Gaudet as a witness for trial. It was not until the conclusion of the second day of trial that HCB's counsel advised it would not call Gaudet.

> . . . Phillips has engaged in a process of buying
> judgments and debts owed by him, placing them in HCB
> and the using those judgments held in the name of HCB
> as a shield against collection.  Testimony regarding this
> legal strategy will be presented at trial.  In fact, while
> HCB and Phillips claim that Phillips is uncollectible
> based upon approximately $67 Million in judgments that
> have priority over this Deficiency Judgment, the
> evidence at trial will conclusively establish that HCB has
> acquired several of the alleged "superior" judgments.

[p.11].  SE Property alleged that "Phillips is gathering up debts and judgments he

owes, placing them into HCB, and directing HCB to forego collection efforts

against him. All of these efforts are a fraudulent attempt to protect his assets by

using prior judgment liens as a shield against creditors." [p.12].   In response, HCB

did not dispute Phillips involvement in HCB and in this action.  Rather, HCB

stated that SE Property has been "keenly aware" of the "extent of Phillips

involvement with HCB" and took the position that "[w]hy should Mr. Phillips be

excluded from participating in conversations and decisions that have and will

affect the profitability of HCB? Mr. Phillips has not denied his position as

Chairman of the Board of HCB and consultant on HCB matters." [pp.4,6].  Phillips

could not plausibly now assert that he was unaware of the allegations SE Property,

represented by Baker, was making against him in the Prior Action.

The first paragraph in SE Property's Trial Brief filed **March 2, 2015** [PA

D.E.298] unequivocally sets forth SE Property's theme in the Prior Action, a theme

that SE Property had been crystalizing since the filing of its second amended complaint in **August 2013**:

> In actuality, this is not a dispute between HCB and SE Property. This is really a dispute between Rupert Phillips ("Phillips"), one of the judgment-debtors to the Deficiency Judgment, and SE Property, regarding SE Property's rightful desire to pursue collection and execution efforts on the Deficiency Judgment against Phillips himself. This dispute is between Phillips and SE Property because Phillips controls HCB, is its *de facto* shareholder, and uses HCB at his whim. Moreover, it was Phillips that orchestrated and negotiated the acquisition of the Deficiency Judgment and related participation agreements in the name of HCB (the "Assignments") to insulate himself and the other Judgment-Debtors from collection efforts.

SE Property details how Phillips uses HCB to acquire judgments against him "which he uses as a shield against creditors" and references the $49 million Bank Atlantic Judgment[9] and the $9,086,180.37 Fifth Third Judgment which are included on the Phillips Chart to the Disqualification Motion as being matters in which Baker previously represented O&A. [p.18-19].

The Prior Action proceeded to a bench trial on March 23-March 25, 2016. SE Property served Phillips with a subpoena to appear and testify at trial on

---

[9] In the Disqualification Motion, Phillips specifically referenced the Bank Atlantic litigation as "representing the largest indebtedness litigation claim against O&A, Olson and Phillips" and claims that "Baker led the joint defense of that litigation." Phillips' efforts in acquiring that judgment and then hiding behind it to insulate himself from creditors was a central theme in the Prior Action and referenced by the Court in its Order rendered after trial.

**February 27, 2015**.  The return of service is attached as Exhibit "F".   Brandon Crossland, counsel at Baker, called Phillips as an adverse witness during SE Property's case in chief.  Phillips' Trial Testimony is attached as Exhibit "G."

Crossland questioned Phillips about the Bank Atlantic and Fifth Third judgments acquired by HCB [p.147-150], Phillips' affiliation with Phillips Capital, including his transfer of shares in HCB to Phillips Capital and his position as sole director [p.153-156], and Phillips use of HCB to protect his daughter [pp.160-162, 210-211].  Upon questioning by his *own* counsel on cross-examination as to when HCB became active, Phillips testified about when the "bottom started to fall out," explaining that:

> It was the summer of two thousand – no, it started in January of 2007.  And by the summer of 2009 we were contemplating putting Olson & Associates into bankruptcy from Olson's side.  In fact, we hired Baker & Hostetler to represent us when we first got started with that bankruptcy.

(p.180).  Phillips testified about his use of HCB in March 2011 and the creation of Phillips Capital (p.180-184):

> And of course, Phillips Capital was created because in 2007 when I was considering bankruptcy, I was advised that I was old enough now that I didn't need to own anything the rest of my life, that anything that needed to be in my kids' names, I didn't need to ever own anything again.

On September 24, 2015, the Court rendered its Order ("Trial Order") [PA D.E.353][10], making the following findings of fact:

> There is no question as to why Phillips was eager to have the North Tip deficiency judgment assigned to HCB, a company Phillips effectively controls and which is solely owned by his closely held family corporation. Phillips testified that he has approximately $80 million in judgments against him personally, and of this amount, HCB has acquired approximately $68 million.[11] The record reflects that HCB paid a fraction of the value of these loans to obtain them. Phillips has also used HCB to protect his family. Phillips' negotiations resulted in HCB assuming the GP Air Loan to insulate his son's airplane from foreclosure and HCB purchased GulfSouth shares from Phillips' daughter to protect her from loss. Moreover, Phillip's control over HCB has continued throughout this litigation. Phillips admitted he attended a mediation in this case as the corporate representative of HCB. It is obvious to the Court that Phillips, a sophisticated businessman and self-proclaimed "deal junkie," plainly understood that he could avoid collection efforts on the North Tip deficiency judgment by having HCB control the collection through the Originating Bank status. . . . (p. 12)[12]

The Court made the following conclusion of law:

---

[10] On February 17, 2016, the Court entered an Order in the Prior Action vacating in part its Trial Order as to the tortious interference claim on the basis that SE Property did not prove damages on the tort claim ("Subsequent Trial Order"). [D.E.391]. This subsequent ruling as to the tortious interference claim does not affect the findings of fact and conclusions of law cited herein.

[11] In footnote 21, the Court specifically references the Bank Atlantic Judgment and the Fifth Third Judgment.

[12] *See* Trial Order, footnote 15.

HCB argues that the Court should be mindful of its separate corporate legal status, which is distinct from Phillips personally, who is not an officer. The evidence shows, however, that Phillips, undoubtedly a savvy deal-maker, took control of HCB and directed its actions when it served his interests to do so, despite the fact that he was not an officer.  For example, it is undeniable that Phillips used HCB to settle his own liabilities and to protect the financial interests of his family because it is a separate entity.  ***Even in this litigation, although HCB is the defendant, Phillips has continued to exercise control, advising HCB to settle the litigation and appearing as HCB's corporate representative in a mediation***.  HCB's separate corporate identity does not insulate it from a conflict of interest where Phillips has exercised unlimited control over the corporation. Because the VB Participation Agreement creates a fiduciary relationship between the Originating Bank and Participating Bank, HCB's irreconcilable and undisclosed conflict of interest in being controlled by a judgment debtor precludes it from fulfilling the obligations of the Originating Bank, and the assignment of this status to HCB was therefore contrary to public policy and is voidable (p. 18).

(Emphasis added).

In the Subsequent Trial Order, the Court stated [PA D.E.391,p.3,fn2]:

Phillips was the sole member of the Board of HCB but was not an officer.  Nonetheless, it was clear from the evidence at trial that despite purporting to distance himself from HCB by stepping down as president, ***Phillips solely controlled its actions***.

(Emphasis added).

Now, more than 11 months after the trial in the Prior Action, Phillips is

trying to disqualify Baker on the premise that Baker, through its representation of

O&A in "2007 and several years thereafter" was part of a collective representation of O&A, Olson, and Phillips attempting "to extricate them from possible financial ruin."   [D.E.20,p.2].   This includes Phillips' claims, joint negotiations and strategies to defend against looming judgments.   Those judgments have been obtained.   HCB raised them in the Prior Action to contend its inaction was "commercially reasonable." SE Property established that many of these "superior" liens were a sham.   SE Property, through the undersigned, has also asserted – for *years* – that HCB was a mere instrumentality of Phillips.   The Court found that Phillips solely controlled HCB's actions.   Phillips <u>freely</u> testified about his motivations behind forming Phillips Capital and reactivating HCB at his deposition in November 2013 and again during trial in March 2015. Phillips mentioned Baker's representation of O&A on both occasions.   Phillips' time to disqualify Baker – if there was ever a valid reason to do so in the first place, which there was <u>***not***</u> – has long passed.

## Phillips Waived the Ability to Disqualify Baker

Phillips' control of HCB and Phillips Capital and HCB's failure to take any action on the Deficiency Judgment based on $67 million in superior liens was at the heart of the controversy in the Prior Action.   By Phillips' failure to seek disqualification of Baker in the Prior Action he has waived his ability to seek disqualification now.

"Waiver is a valid basis for the denial of a motion to disqualify." *In re Jet 1 Center, Inc.,* 310 B.R. 649, 654 (M.D. Fla. 2004). In determining whether a moving party has waived its right to object to the opposing party's counsel, a court should give consideration to:

(1). the length of the delay in bringing the motion to disqualify;
(2). when the movant learned of the conflict;
(3). whether the movant was represented by counsel during the delay;
(4). why the delay occurred; and
(5). whether disqualification would result in prejudice to the non-moving party.

*Id.*at 654. "In particular, consideration should be given and inquiry be made as to whether the disqualification was delayed for tactical reasons." *Id; see also Koloff v. Metropolitan Life Ins. Co.,* 2014 WL 2590209 (E.D. Ca. 2014)("Even assuming a conflict exists, Metlife unreasonably delayed in seeking to have McKennon disqualified. The filing of a motion to disqualify McKennon as counsel at this juncture seems to be only tactically motivated").

An opposing party can waive the right to seek disqualification of its opponent's counsel by failing to make a timely objection. *In re Jet,* 310 B.R. at *654; Cox v. Am. Cast Iron Pipe Co.,* 847 F.2d 725, 731 (11th Cir. 1988)(noting that "[t]his court has indicated that waiver is appropriate 'where the former client, having every opportunity to do so, fails to object to a new relationship involving its former attorney'" and holding "as a matter of law" that defendant waived its right

to seek disqualification of plaintiffs' counsel as it had "'every opportunity' to object, but failed to do so"); *Quail Cruises Ship Management Ltd. v. Agencia De Viagens CVC Limitada,* 2010 WL 2926042, *6 (S.D. Fla. 2010)(finding defendant waived right to seek disqualification of plaintiff's counsel as they had nearly three months' warning about the impending litigation yet waited six months after the complaint was filed to move for disqualification); *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85 (9th Cir. 1983)(finding that opposing party's failure to object to the representation and "long delay" of two and a half years in filing a motion to disqualify "constitute a *de facto* consent to the Jardine firm's continued representation of Piper and a waiver of its right to object").

The fact that Phillips was not a named party in the Prior Action is irrelevant. Knowledge is the key issue.  In *In re Jet,* a debtor filed a chapter 11 case after a three day bench trial in state court brought against it by the Naples Airport Authority (NAA) for breach of lease covenants, eviction and for injunctive relief. *In re Jet,* 310 B.R. at 651.  During the bankruptcy proceeding, a bank, claiming that it held a perfected security interest on all the debtor's assets, sought to disqualify the NAA's counsel.   Even though the bank was not a party to the previous state court action, the bankruptcy court found that waiver applied, citing the lawyer's representation of the NAA in the state court action "without any objection from the Bank" and stating that it was "satisfied that the Bank was

aware" of the lawyer's representation of the NAA "for a considerable amount of time prior to filing" the motion.

Nor is waiver measured from the time a complaint is actually filed.  In *Gross v. SES Americom, Inc.,* 307 F.Supp.2d 719 (D. Md. 2004), Laughton and Gross were the owners of Columbia Communications Corp. ("Columbia").    SES Americon, Inc. ("SES") acquired all of the stock of Columbia from Laughton and Gross in a transaction in which Holland and Knight (H&K) represented Laughton, Gross and Columbia.  Contemporaneously with that sale, Columbia was merged into a subsidiary of SES and became a wholly owned subsidiary of SES, which was then named SES after completion of the merger.  Later, a dispute arose as to whether SES and Columbia were fulfilling certain contractual obligations.  Over a period of more than two years, H&K, presenting Laughton and Gross, exchanged numerous letters with SES and Columbia's counsel concerning this dispute and other issues related to the contractual undertakings of the parties.  When the parties were unable to resolve their dispute, Laughton and Gross, represented by H&K, filed suit against SES and Columbia. The parties continued to negotiate a possible settlement and, when that failed, SES and Columbia filed a motion to dismiss the complaint which was ultimately denied.  A month later, SES and Columbia filed a motion to disqualify H&K as counsel for Laughton and Gross based on H&K's prior representation of Columbia which was merged with the SES subsidiary that

22

became the defendant in the action.  The court denied the motion on the basis of

waiver, finding that:

> Counsel for SES Americom and Columbia knew that Holland & Knight represented Gross and Laughton in the present action well before the pair filed suit in January 2003, because the parties participated in protracted negotiations over a period of two years from November 2000 until January 2003.

> Columbia first argues that it was not required to raise the disqualification issue until after Gross and Laughton filed their Complaint.  The Court disagrees and finds the distinction to be one without a difference.

> Second, Columbia argues that until Gross and Laughton filed their Complaint it did not know that it would be named as a defendant.  Therefore, according to Columbia, the years of negotiation should not be considered when determining whether the Motion to Disqualify was timely.  The Court finds this explanation to be disingenuous because the failure of Columbia to pursue approval of the applications was at the heart of the controversy between the sellers and the buyer, and is asserted in the *first count* of the complaint. Moreover, even after Gross and Laughton filed their complaint, Columbia waited almost a full year to file its motion.

> Third, Columbia contends that because its Motion to Dismiss, filed in March 2003, was pending until October 31, 2003, its delay in moving to disqualify should be excused because, understanding the gravity of a motion to disqualify, it waited for the outcome of the motion to dismiss, hoping that Count I would be dismissed, thus resolving the conflict.  Columbia's explanation for its delay is seriously wanting.  Had Columbia harbored serious concerns over Holland & Knight's supposed conflict, it could and should have filed a motion to disqualify promptly.  Instead, Columbia attempted to

> have its cake and eat it too, strategically unleashing its delinquent motion on December 23, the eve of a major holiday. Not only was this delay unreasonable by any yardstick, but also Gross and Laughton would be severely prejudiced at this late date if they were forced to hire new counsel. Holland & Knight has represented Gross and Laughton for over four years and for over a year in this litigation. In short, Columbia's disqualification train long ago left the station, and it is simply too late to get on board.

(Internal citations omitted); *see also Chemical Waste Management, Inc. v. Sims,* 875 F.Supp. 501 (N.D. Ill. 1995)(calculating 21 month delay in objecting to representation from the date claims against the party were threatened, rather than from the date when suit was actually filed more than a year later).

Here, the second amended complaint in the Prior Action filed in **August 2013** makes the same allegations against Phillips that Phillips now attempts to use to disqualify Baker. Phillips' use of and control over HCB and Phillips Capital were "at the heart of the controversy," *Gross,* 307 F.Supp.2d at 724. HCB made uncollectability of the Deficiency Judgment due to $67 million in supposed "superior liens" its main defense in the Prior Action. There is no question as to Phillips' knowledge and involvement in the Prior Action and of Baker's past representation of O&A. Phillips himself mentioned Baker's representation of O&A during his deposition in **November 2013**. Phillips was represented at that deposition by the attorney bringing this motion *here.* This action is a result of testimony the undersigned has elicited from Phillips and allegations the

24

undersigned has developed and proven over a number of years.   If Phillips strategically decided not to seek disqualification of Baker in the Prior Action or never expected SE Property to prevail in the Prior Action, he cannot "have [his] cake and eat it too."   *Id.*   Motions to disqualify counsel "should be made with reasonable promptness."   *Great American Ins. Co.,* 2008 WL 1994857 at *2.   This one misses that mark by a mile.

The inescapable conclusion is that the Disqualification Motion was not filed until now for tactical reasons.   As the court held in *Gross,*

> There are occasions when serious questions arise as to disqualification of a law firm from representation of a party in litigation.   This is not one of them.   The motion falls squarely within the category of a "technique of harassment" against which a cautionary note was included in the [Florida] Rules of Professional Conduct. The motion, was in the final analysis, a transparent attempt to obtain a tactical advantage utilizing a matter of mere form having not substance.

*Id.* (Internal citations omitted).

## An Evidentiary Hearing is Not Required

An evidentiary hearing is not required to determine that Phillips has waived any right to disqualify Baker.   In *RJSG,* the Court denied a motion to disqualify counsel without an evidentiary hearing, finding that "an evidentiary hearing is not required for disposition of this matter."   *RJSG Properties, LLC,* 2009 WL 3581637 at *4.   The Court, citing a Florida case for the holding that "a hearing is not

required on every motion to disqualify counsel, even when conflicting affidavits have been submitted," concluded that "in light of the relevant law, the affidavits and other evidence presented, RJSG is not entitled to the relief it seeks."  *Id; see also Suchite v. Kleppin,* 784 F.Supp.2d 1343, 1345 (S.D. Fla 2011)("An evidentiary hearing is not necessary for a motion to disqualify counsel where there are no disputed issues of material fact."); *Koloff,* 2014 WL 2590209 at *1 (denying defendant's motion to disqualify plaintiff's counsel without a hearing "because the issues were set forth adequately in the pleadings, the Court finds that oral argument is not necessary"); *Lowe v. Experian,* 328 F.Supp.2d 1122, 1125(D. Kan. 2004)(denying a motion to disqualify counsel based on the parties' briefing, as the court found that an evidentiary hearing would not be "helpful" and "is not required when the parties have fully briefed the issue and when there are no disputed issues of fact or there is otherwise no need for any additional evidence to be presented to the court.").

An evidentiary hearing is not necessary to consider whether Phillips has waived any ability to seek to disqualify Baker at this late juncture. This determination can be made *as a matter of law* and by considering the pleadings in the Prior Action cited herein and Phillips' own testimony.

## Phillips Has Failed to Establish a Basis for Disqualification

This Court can dispose of the Disqualification Motion on the basis that

Phillips has waived the right to seek disqualification of Baker.  By first addressing the waiver issue, which can be easily resolved, this Court can prevent Phillips from using his motion as a stall tactic and a means of harassment.  This Court can also ensure that SE Property is not put into a situation of having to replace its counsel as set forth above to prevent prejudicial delay.  *See In re Jet,* 31 B.R. at 652 (recognizing that counsel's continuing representation of NAA is invaluable to NAA and to "compel NAA to seek a replacement would put NAA in a very difficult and no doubt, expensive position").

SE Property asserts that this Court *can* dispose of Phillips' motion without the discovery, *in camera* inspections, depositions, evidentiary hearing and three-ring circus Phillips is hoping ensues.  Phillips is not claiming to be a "former client" but rather asserting privilege through a "shared" interest and defense he purports to have had with Baker's former client, O&A.  (D.E.20,p.10).  In such situations, there is "no presumption that confidential information was exchanged as there was no direct attorney-client relationship."[13] *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.,* 559 F.2d 250 (5th Cir. 1977).  Instead, it must be

---

[13] Phillips assertion that "the disqualification test does not require the former client to show that actual confidences were disclosed," (D.E.20,p.22) is **dead wrong**. The very cases cited by Phillips make clear that in seeking to disqualify the attorney of a previous co-party, the movant must <u>prove</u> that the lawyer was privy to confidential information.

determined that the lawyer was "actually privy to confidential information." *Id.*[14]

To seek the disqualification of Baker, Phillips would need to establish (1) a joint defense was undertaken between O&A, Phillips, Olson and their respective counsel; (2) Baker received confidential information from this joint defense that it could use to SE Property's advantage now; and (3) this matter is "substantially related" to the matters in which Baker represented O&A or Olson.

Yet, Phillips' motion is devoid of any specifics as to the information that Baker was given access to pursuant to an unwritten "joint defense agreement" during 2007-2010, that can be used to SE Property's benefit *now.*  Instead, Phillips contends that Baker represented O&A and Olson "in a host of matters including foreclosure litigation defense, defense of lender claims against Olson as guarantor, asset liquidation, possible refinancing of existing debt. . ." (D.E.20,p.10).  A "catalogue of such generalities offers little assistance." *Duncan v. Merill Lynch, Pierce, Fenner & Smith Inc.,* 646 F.2d 1020, 1029 (5th Cir. 1981).

Phillips cites to, but tries to ignore, *Berlinger v. Wells Fargo, N.A.,* 2013 WL 3866533 (M.D. Fla. 2013).  In *Berlinger,* beneficiaries to a trust alleged that Wells Fargo, co-trustee of the trusts, wrongfully distributed trust funds to Sue

---

[14] Phillips relies heavily on *Armco* for this "twist to the usual attorney-client controversy." *Id.* at 253.  However, *Armco* involved a conspiracy charge.  The court agreed with defendant that "in a joint defense of a conspiracy charge, the counsel of each defendant is, in effect, the counsel of all for the purposes of invoking the attorney-client privilege in order to shield mutually shared confidences." *Id.*

Casselberry after her 2007 divorce settlement with Bruce Berlinger.  Wells Fargo filed a third-party complaint alleging claims of contribution and unjust enrichment against Berlinger.  Berlinger sought to disqualify Wells Fargo's counsel, Rubin, claiming that an attorney-client relationship formed between he and Rubin in the prior divorce proceeding.  In that proceeding, Berlinger and Wells Fargo entered into a *written* joint defense agreement that was executed and signed on their behalves by their attorneys, with Rubin signing for Wells Fargo. The court disagreed with Berlinger that an attorney-client relationship was formed between him and Rubin, determining that co-defendants who enter into a joint defense agreement are represented by *independent* counsel.  The Court recognized that a joint defense agreement does not necessarily create a duty of loyalty between co-defendants and their counsel and stated that it was "improper to conclude that all the attorneys in the joint defense strategy session represent all of the participating defendants."   The Court, citing the Eleventh Circuit's opinion in *United States v. Almeida,* 341 F.3d 1318 (11th Cir. 2003)[15] and *Armco*, found that Berlinger failed to establish an attorney-client relationship existed between him and Rubin.  *Id.* at 2.  Because no attorney-client relationship was created by a *written* joint defense

---

[15] In *Almeida,* the Eleventh Circuit noted that "the mere inability to utilize the privileged communications [obtained during a joint defense strategy session] is not itself a manifestation of a conflict of interest, because no lawyer in the world could utilize those communications." *Id.* at 1323.

agreement, the court did not address the other factors, stating simply that "Rubin remains unable to utilize privileged communications shared pursuant to the JDA." Baker has no intention of using any information it derived from its representation of O&A almost a decade ago.

Phillips bears the burden of proving the grounds for disqualification and the standard of proof is high. *RJSG Properties,* 2009 WL at 4. Phillips has wholly failed to offer any *proof*[16] as to the existence of a joint defense agreement or that Baker is in possession of confidential information it obtained pursuant to such an agreement during the 2007-2010 time frame that can be used to SE Property's advantage now. Phillips' ten page "Factual Background" is unsupported by any evidence beyond Phillips' blanket verification of the motion. Notably, there is not a single affidavit of Phillips or his counsel providing any factual support. Instead, the Disqualification Motion is replete with accusations, insinuations, and assumptions.

The Phillips Chart of cases filed in 2007-2009 in which Baker represented O&A in foreclosure and loan default cases is entirely insufficient in establish that Baker's representation of O&A in those matters is substantially related to the allegations against Phillips, HCB, and Phillips Capital asserted in this action and

---

[16] *See Pensacola Firefighters' Relief Pension Fund Board of Trustees v. Merrill Lynch Pierce Fenner & Smith, Incorporated,* 2011 WL 3512180, *6 (N.D. Fla. July 7, 2011).

that Baker obtained confidential information of *Phillips* during its representation of O&A that it could use against Phillips here. [17]   Simply because these claims may have also been "finance-based," does not rise to the requirement of "substantially similar."[18]   Phillips' assertion that *he* needs discovery to support *his* motion is

---

[17] Further, Phillips entirely ignores the fact that simply being exposed to confidential information *in the past*, does not preclude representation adverse to even a former client (which Phillips is not).   The comment to Rule 4-1.9 makes clear:

> However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client.   Information that has been widely disseminated by the media to the public, or that typically would be obtained by any reasonably prudent lawyer who had never represented the former client, should be considered generally known and ordinarily would not be disqualifying.   The essential question is whether, but for having represented the former client, the lawyer would know or discovered the information.

> Information acquired in a prior representation may have been rendered obsolete by the passage of time.

Phillips freely testified as his personal use of HCB and Phillips Capital and the reason for their reactivation and formation, respectively.   Further, any financial information of Phillips that Baker may have been privy to during its representation of O&A in 2007-2009 is stale and obsolete.

[18] In *Cochran v. Five Points Temporaries, LLC,* 2012 WL 4726285, *13 (N.D. Ala. 2012), a case cited by Phillips, the court, holding that defendants did not meet their burden, recognized that in "cases where courts have found that a prior matter is substantially related to the current matter, the causes of action in both lawsuits are usually the same."

circumspect, as his Disqualification Motion is premised on the claim that *he* or his counsel provided confidential information to Baker.

A review of the Complaint in this action, the trial testimony cited herein, and the Trial Orders entered in the Prior Action make clear that the claims brought against Phillips are a result of Phillips' own testimony, not any confidential information to which Phillips claims Baker was privy.  For instance, in seeking a stay of this action during the pendency of the Disqualification Motion, Phillips details allegations in the complaint [D.E. 1 at ¶¶88, 90] and asserts that "[t]hese underpinnings of these specific finance-based allegations of fact are only a part of the matters relevant to the Disqualification Motion." [D.E. 25 at p. 3].  Yet, these *allegations* are rooted in Phillips' *own* testimony during his deposition and at trial in the Prior Action.

Because Phillips has wholly failed to meet his burden here, this Court should find that Phillips has failed to make out a prima facie case for disqualifying Baker based on Baker's prior representation of O&A and no further examination into this issue is required.[19]  Despite his repeated insistence that an evidentiary hearing is required, one simply **is not**, as set forth above.

**WHEREFORE,** SE Property Holdings, LLC respectfully requests that this Court deny the Disqualification Motion and grant all further relief the Court deems

---

[19] It cannot be ignored that Phillips' threat of a breach of fiduciary duty claim against Baker, footnote 10, is both inappropriate and sanctionable.

just and proper.

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1, the undersigned counsel certifies that this memorandum contains 7995 words as per the report of the word processing program utilized to prepare this memorandum.

Respectfully submitted this 7TH day of March, 2016

/s/ Julie Singer Brady
Julie Singer Brady
Florida Bar No. 0389315
E-mail: jsingerbrady@bakerlaw.com
Brand T. Crossland
Florida Bar No. 0021542
E-mail:  bcrossland@bakerlaw.com
Krista A. Sivick
Florida Bar No. 0059518
E-Mail:  ksivick@bakerlaw.com
BAKER & HOSTETLER LLP
200 S. Orange Avenue #2300
Post Office Box 112
Orlando, Florida 32802-0112
Telephone:  407-649-4000
Telecopier:  407-841-0168
*Attorneys for Plaintiff, SE Property Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2016, a true and correct copy of the foregoing was served on all parties by the Court's CM/ECF system, and that pursuant to N.D. Fla Loc. R. 5.1(f), each party on whom the document will be

served is represented by an attorney who will be served through the electronic filing system.

/s/ Julie Singer Brady
Julie Singer Brady