IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SE PROPERTY HOLDINGS, LLC,
as successor by merger with Vision Bank,
    Plaintiff,

vs.                                                                          Case No.:  3:15-cv-00554-MCR-EMT

RUPERT PHILLIPS, HCB FINANCIAL
CORP., and PHILLIPS CAPITAL
PARTNERS, INC.,
    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This cause is before the court on Defendant Rupert Phillips' Verified Motion to Disqualify Plaintiff's Counsel and Incorporated Memorandum of Law (ECF No. 20), to which Plaintiff has filed a Memorandum in Opposition (ECF No. 31). Defendant then filed a Reply Brief (ECF No. 35).  This matter was referred to the undersigned to conduct any evidentiary or other proceedings as necessary and to enter a Report and Recommendation as to the disposition of the motion (ECF No. 37).  To that end, a hearing was held on May 5, 2016, which was limited to oral argument solely on the issue of whether Defendant had waived his right or opportunity to present the motion.  For reasons stated herein, I will recommend that the motion be denied on grounds of waiver.

**BACKGROUND**

The factual backdrop to this motion necessarily includes consideration of the events and circumstances in a predecessor case, *SE Property Holdings, LLC, v. HCB Financial Corp.*, Case 3:13cv6/MCR/CJK ("previous action").[1] Defendant Phillips was not a party to the previous action, but Plaintiff here, SE Property Holdings, LLC ("SEPH") was. SEPH was represented by the law firm of Baker & Hostetler LLP ("Baker") in both the previous action and in the instant case.

The previous action was first filed in state court in August of 2012, against GulfSouth Private Bank ("GulfSouth") as the originating bank in a participated loan, in which SEPH, as successor in interest from Vision Bank, was a participating bank holding a 44.90% interest. SEPH claimed that, after the loan defaulted, GulfSouth foreclosed on the secured property and obtained a deficiency judgment for the remaining amount, but it was not making any further collection efforts in order to distribute further proceeds among the other participating banks. The matter was then removed to this court by the FDIC as Receiver for GulfSouth on January 14, 2013. SEPH subsequently discovered that GulfSouth had assigned the Deficiency Judgment

---

[1] The court takes judicial notice of its own records. *See* Fed. R. Evid. 201(b); McDowell Bey v. Vega, 588 Fed. App'x 923, 926-27 (11th Cir. 2014); Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005).

to HCB Financial Corporation ("HCB"), which had also obtained the assignment of all the other participating bank interests. Thus, on January 28, 2013, SEPH amended its complaint to add HCB as a defendant. The amended complaint identified Phillips as a current and/or former officer and director for HCB. On August 13, 2013, SEPH again amended its complaint because of newly discovered evidence relating to the heightened degree of Phillips' affiliation with and control over HCB, and also the fact that Phillips was a judgment debtor who was personally involved with the assignment of the deficiency judgment to HCB. The second amended complaint also alleged that Phillips was the current chairman of HCB and was also the President and Director of Phillips Capital Partners, Inc., ("Phillips Capital") the "parent" corporation of HCB.

SEPH related that Phillips' involvement became apparent after Phillips appeared at the July 31, 2013, mediation conference as the sole representative of HCB. Phillips was subsequently deposed on November 5, 2013, by SEPH, with Denis Durkin, an attorney with the Baker law firm, doing the questioning. When discussing during the deposition why HCB was "reactivated," Phillips stated:

> Actually I think we reactivated in 2009. In 2007, when the real estate collapse happened, I hired – we actually hired your firm and hired Berger Singerman to represent us because we thought we were going to have to file for bankruptcy because of Olson and Associates. I put my life savings into the real estate business, and it was the wrong time to do

> it. So in 2007, I thought I was going bankrupt; and narrowly escaped it, still may not have escaped it, so still – still could be problematic.

(ECF No. 31-2 at 11 (Phillips Dep. at 8)).

Phillips also provided testimony during his deposition as to the ownership structure and financial dealings of both HCB and Phillips Capital. SEPH eventually asserted as part of its case in the previous action that Phillips maintained full control and authority over HCB and its decisions regarding the Deficiency Judgment and that for all intents and purposes, Phillips *was* HCB.

A bench trial was held in the previous action in March of 2015. Phillips was subpoenaed to testify and was questioned by counsel for SEPH, Brandon Crossland, an attorney at Baker. On September 24, 2015, the Court issued its decision. As is relevant here, the order stated:

> HCB argues that the Court should be mindful of its separate corporate legal status, which is distinct from Phillips personally, who is not an officer. The evidence shows, however, that Phillips, undoubtedly a savvy dealmaker, took control of HCB and directed its actions when it served his interests to do so, despite the fact that he was not an officer. For example, it is undeniable that Phillips used HCB to settle his own liabilities and to protect the financial interests of his family because it is a separate entity. Even in this litigation, although HCB is the defendant, Phillips has continued to exercise control, advising HCB to settle the litigation and appearing as HCB's corporate representative in a mediation. HCB's separate corporate identity does not insulate it from a conflict of interest where Phillips has exercised unlimited control over the corporation. Because the VB Participation Agreement creates a

fiduciary relationship between the Originating Bank and Participating Bank, *HCB's irreconcilable and undisclosed conflict of interest in being controlled by a judgment debtor* precludes it from fulfilling the obligations of the Originating Bank, and the assignment of this status to HCB was therefore contrary to public policy and is voidable.

(Case 3:13cv6/MCR/CJK, ECF No. 353 at 18) (emphasis supplied).

The court went on to conclude:

> The Court finds that *HCB's conduct of negotiating with GulfSouth through Phillips* for the purpose of gaining control over the collection process and preventing SE Property from obtaining a pro rata assignment of the judgment from GulfSouth constitutes intentional and unjustifiable interference with SE Property's fiduciary relationship with the Originating Bank, which was its agent with respect to the judgment. *Phillips, a judgment debtor, used HCB* to interfere with SE Property's relations with GulfSouth and to obtain a result, i.e., control of the judgment collection process, that he otherwise could not have lawfully obtained for himself.

(Case 3:13cv6/MCR/CJK, ECF No. 353 at 23) (emphasis supplied).

On December 15, 2015, SEPH filed the instant cause of action against Defendants Phillips, HCB and Phillips Capital, claiming among other things that Phillips used HCB as an instrumentality to shield himself from any collection on the note and that SEPH should be able to reverse pierce the corporate veil of Phillips Capital and HCB to help recover on the debt. The complaint was served on Phillips on January 11, 2016, and he filed the instant motion to disqualify on February 1, 2016.

This motion is predicated upon Phillips' involvement as a manager for Olson & Associates of NW Florida, Inc. ("O&A"), a company doing real estate development business in Florida. As Phillips describes it, O&A financed its operations generally by borrowing funds from local banks, and typically Phillips and another manager, Rick Olson, guaranteed those loans. In 2007, O&A encountered financial difficulties to the degree that Phillips and Olson might become personally exposed to significant liability on the bank loans. In an attempt to "work out" these loans with the lenders, Olson and Phillips hired a legal team that included the Baker law firm as well as the law firm of Berger Singerman LLP, which represents Phillips in this lawsuit.

As Phillips relates in his motion, Baker was privy to confidential information and communications regarding both his financial interests as well as those of O&A. Phillips further contends:

> By 2008 almost 10 lawsuits had been filed against O&A and which implicated Phillips and Olson's financial interests and liabilities.
> Baker was actively involved in several of those many litigations as counsel for Olson and O&A, alongside Phillips and his counsel, as part of a common defense consortium. Baker (and its clients Olsen and/or O&A) freely cooperated with Phillips and his counsel in the common defense of these litigations; Baker filed many pleadings and papers in common with Phillips and his counsel. E-mail traffic among Baker and Phillips' counsel covered many strategic points, including proposed settlement terms to be offered by the cooperating defendants to various lenders suing them.

ECF No. 20 at 5.  Phillips states that Baker's involvement in this capacity extended into 2010.

Thus, Phillips describes the above as "a classic example of a joint defense arrangement" which has created a disqualifying conflict because the confidential information gained by Baker, who is now opposing counsel in the case at bar.

In response, SEPH asserts that, as far back as July of 2013, when Phillips participated in mediation in the previous action, or at least since Phillips' deposition in November of 2013, Phillips was aware of Baker's representation of SEPH and therefore the conflict.  SEPH therefore contends that Phillips' failure to pursue Baker's disqualification in 2013 or otherwise during the previous action constitutes a waiver of his right to do so in the instant case.

## ANALYSIS

In keeping with the ethical rules of the American Bar Association's Code of Professional Responsibility, whenever an attorney opposes a former client, that attorney may be subject to disqualification when 1) the former client once held an attorney-client relationship with the opposing attorney and 2) matters relevant to the pending suit are substantially related to the matters taken up during the attorney's previously representation of the former client.  <u>Cox v. Am. Cast Iron Pipe Co.</u>, 847

F.2d 725, 728 (11th Cir. 1988).  As is also relevant here, the former client may waive his right to seek disqualification, and waiver may also be implicitly found "where the former client, having every opportunity to do so, fails to object to a new relationship involving its former attorney."  Id. at 731 (quoting In re Yarn Processing Patent Validity Litigation, 530 F.2d 83, 90 (5th Cir. 1976)).  Since failure to make a timely waiver may result in a waiver, '[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." Id. at 729 (quoting Jackson v. J.C. Penney Co., 521 F. Supp. 1032, 1034-35 (N.D.Ga. 1981)).

Analysis of whether a party has waived its right to object to the opposing party's counsel should consider the following factors: 1) the length of the delay in bringing the motion to disqualify; 2) when the movant learned of the conflict; 3) whether the movant was represented by counsel during the delay; 4) why the delay occurred; and 5) whether disqualification would result in prejudice to the nonmoving party. In re Jet 1 Center, Inc., 310 B.R. 649, 654 (M.D. Fla. 2004) (citing Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1115 (D.N.J. 1993)); *see also* INA Underwriters Ins. Co. v. Nalibotsky, 594 F. Supp. 1199, 1204 (D.C. Pa. 1984) (finding waiver "when a former client was concededly aware of the former attorney's

representation of an adversary but failed to raise an objection promptly when he had the opportunity").

Special consideration should also be given to situations where the motion was delayed for tactical reasons. Jet 1, 310 B.R. at 654; *see also* Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) ("We share the Court of Appeals' concern about 'tactical use of disqualification motions' to harass opposing counsel"); Central Milk Producers Co-op. v. Sentry Food Stores, Inc., 573 F.2d 988, 992 (8th Cir. 1978). "A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed." Cox, 847 F.2d at 728 (quoting Jackson, 521 F. Supp. a 1034-35).

Measured only against the timeline of the instant action, it would have to be said that Phillips, by filing the motion to disqualify approximately three weeks after being served with the complaint, acted with dispatch. However, when the facts and events of the previous action are brought into the analysis, the delay becomes a much more substantial three years. Thus, the pivotal issue in this case becomes whether the events from the previous action should be included in determining the "delay factor" in the waiver analysis outlined above.

As SEPH details in its responsive memorandum, cases have held that pre-suit actions or events are relevant in determining when the movant became aware of the conflict and the amount of delay that resulted. <u>Quail Cruises Ship Management Ltd. v. Agencia DeViagens CVC Limitada</u>, No. 09-23248-CIV, 2010 WL 2926042 *6 (S.D. Fla. July 23, 2010)(finding defendants waived right to disqualification because they had nearly three months' warning about the impending litigation yet waited six months after the complaint was filed to move for disqualification); <u>Concerned Parents of Jordan Park v. Housing Authority of City of St. Petersburg, Fla.</u>, 934 F.Supp. 406, 408 (M.D. Fla. 1996) (same; Defendant knew of conflict several months before action commenced and waited five months thereafter); <u>In Gross v. SES Americom, Inc.</u>, 307 F. Supp. 2d 719, 723-24 (D. Md. 2004) (rejecting argument from movant that time preceding filing of complaint should not be considered since client did not know it would be named as a defendant, where movant spent significant time participation in pre-suit negotiations of issues that would form the basis of the complaint). <u>Chemical Waste Management, Inc. v. Sims</u>, 875 F. Supp. 501 (N.D. Ill. 1995)(calculating 21 month delay in objecting to representation from the date claims against the party were threatened, rather than from the date when suit was actually filed more than a year later); <u>Jet 1</u>, 310 B.R. at 654 (finding waiver where movant bank with security interest

over defendant's assets had prior knowledge of plaintiff attorney's conflict during an earlier, separate litigation involving same parties, but bank did not move for disqualification for tactical reasons).

To distinguish the above cases, Phillips emphasizes that he was not a party to the previous litigation, but this ignores the fact that Phillips was intimately associated with the previous action, as amply noted by the above description of that case. In the same sense, none of the movants in Quail Cruises, Concerned Parents, Gross, and Chemical Waste were "parties" during the time when pre-suit activities were a part of the overall delay. Phillips points out that, in varying degrees, the party moving for disqualification in the above cited cases had delayed during the pendency of the actual lawsuit, but this does not eradicate the fact that pre-suit delay was–and should be–a contributing factor.

Phillips' position might be more accurately perceived as questioning not whether he had the requisite knowledge of the conflict but whether, as a nonparty to the previous action, he was in a position to remedy that conflict. However, the facts and events of the previous action irrefutably demonstrate Phillips' deep association with HCB and his "unlimited control" over its operation. Phillips' implication that he could not have raised the matter of Baker's conflict is untenable in light of this

information. As SEPH indicates, even assuming that Phillips could not have acted through or on behalf of HCB to file a motion to disqualify, he could have alternatively moved to intervene in the case, or he could have moved to quash the subpoena that brought him further into the case as a witness. *See* Freedom Wireless, Inc. v. Boston Commc'ns Group, Inc., No. 2006-1020 et al., 2006 WL 8071423 at *2 (Fed. Cir. Mar. 20, 2006) (recognizing right of company to intervene in lawsuit based on counsel's conflicting representation of both it and the plaintiff company); Municipal Revenue Services, Inc. v. Xspand, Inc., 537 F. Supp. 2d 740, 743 (M.D. Pa. 2008) (recognizing right of nonparty to move to quash subpoena on basis of conflict in representation with counsel who would conduct deposition).

Phillips' inaction in addressing Baker's conflict appears to have been tactically motivated. Instrumental in the court's holding in the previous action was its finding that "Phillips, a judgment debtor, used HCB to interfere with SEPH's relations with GulfSouth and to obtain a result, i.e., control of the judgment collection process, that he otherwise could not have lawfully obtained for himself." Case 3:13cv6/MCR/CJK, ECF No. 353 at 23. It is therefore apparent that Phillips would have a legal interest against being characterized as essentially the alter ego of HCB, and since raising the conflict issue with Baker might well have been seen as a further

evidence of that alter ego relationship, if not an outright admission, it stands to reason that Phillips would elect not to pursue Baker's disqualification or any similar measure. In other words, if Phillips had raised the conflict issue in the previous action, he would have conceded what the court ultimately found as fact.

Because it was Phillips' tactical decision not to raise disqualification when it became apparent, his current filing of the motion may be seen "as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed." Cox, 847 F.2d at 728. Even if that were not Phillips' intention, it is nonetheless the result, and it is doubtless that Baker has done an extensive amount of work in both the current and previous actions. If SEPH were forced to hire new counsel, a substantial amount of time would be needed for new counsel to become familiar with the case. This of course would delay the progress of the present action. As far as the prejudice factor of the disqualification analysis, it is true that the mere act of having to replace counsel is insufficient. Lennar Mare Island, LLC v. Steadfast Ins. Co., 105 F. Supp.3d 1100, 1119-20 (E.D. Cal. 2015). However, because there has already been a closely related litigation in which Baker has participated for the last three years, prejudice is more readily found. Jet 1, 310 B.R. at 652; Kelly v. Roker, No. C 11-05822 JSW, 2012 WL 851558 at *4 (N.D. Cal. Mar. 13, 2012);

Employers Ins. of Wausau v. Albert D. Seeno Const. Co., 692 F.Supp. 1150, 1166 (N.D. Cal. 1988).  Moreover, the tactical nature of the delayed timing of a motion to disqualify should be taken into account when determining prejudice.  Lennar Mare Island, 105 F. Supp. 3d at 1120.

**CONCLUSION**

Considering the relevant factors in light of the above, I find that 1) Phillips delayed bringing the motion to disqualify for at least three years; 2) Phillips learned of the conflict no later than November 2013, and likely much earlier; 3) Phillips was represented by his current counsel throughout the period of delay; 4) the delay occurred for tactical reasons in that Phillips was attempting to hide his control of HCB; and 5) disqualification of the Baker firm would substantially prejudice Plaintiff and would further delay this case.

Accordingly, it respectfully **RECOMMENDED**:

1. That Defendant Rupert Phillips' Verified Motion to Disqualify Plaintiff's Counsel and Incorporated Memorandum of Law (ECF No. 20) be **DENIED**.

At Pensacola, Florida, this 24th day of May, 2016.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**